DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Tommy C. Wheeler, filed this original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to such compensation. Relator also asserts that the commission abused its discretion by denying relator's motion to depose a vocational expert, Mark A. Anderson.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has concluded that this court should deny the requested writ of mandamus. (Attached as Appendix A.) The matter is now before the court for an independent review pursuant to Civ.R. 53 upon relator's objections to the magistrate's decision.
 {¶ 3} Summarizing the facts found in the magistrate's decision, relator sustained a work-related injury on June 25, 1980 with a recognized claim for multiple spinal conditions. His application for PTD was supported by a report provided by Dr. Fagerland, who opined that relator was permanently and totally disabled and incapable of any form of remunerative employment. The commission's doctor, Dr. Lutz, opined that relator had reached maximum medical improvement, suffered a 44 percent whole person impairment, and was capable of performing sedentary work.
 {¶ 4} An employability assessment report prepared by Mr. Anderson first concluded, on the basis of Dr. Fagerland's assessment, that relator was not employable, but in reliance on the medical report of Dr. Lutz, concluded that relator could perform a series of sedentary occupations set forth in the report. Mr. Anderson found that relator's age of 56 would not preclude him from obtaining entry level unskilled work activity, that relator could read, write, and perform basic math, and had the ability to perform semi-skilled to skilled work activity with management skills that would transfer to other occupations.
 {¶ 5} Relator submitted a contrasting employability assessment prepared by Jennifer J. Stoeckel, Ph.D., who concluded that relator's limited intellectual ability and extremely low reading, writing and arithmetic levels rendered him permanently and totally disabled as a result of his allowed conditions, residual impairment, age, and limited residual, intellectual, academic and vocational function. The limitation on relator's intellectual functioning was, in large part, attributed to relator's history of multiple strokes, a non-allowed condition.
 {¶ 6} The staff hearing officer denied relator's request to depose Mr. Anderson because the reports of Mr. Anderson and Dr. Stoeckel were based on different sources of assessment and certain physical conditions relied upon by relator were not obtained by Dr. Lutz as the result of Dr. Lutz's examination, but had merely been described to Dr. Lutz by relator.
 {¶ 7} On the application for PTD itself, the staff hearing officer denied compensation based upon the medical report of Dr. Lutz, which opined that relator was capable of performing some remunerative work of a sedentary nature. The staff hearing officer also noted that relator's claimed low academic functioning level was not indicative of relator's formal level of education, which included attainment of a G.E.D. diploma. The staff hearing officer also noted evidence of a more extensive prior work history than was listed on the application for PTD.
 {¶ 8} In assessing the evidence and staff hearing officer's order, the magistrate concluded that the commission had correctly considered medical and nonmedical factors and permissibly relied upon Dr. Lutz's report. The magistrate also rejected relator's contention that the commission's order was internally inconsistent in accepting Dr. Stoeckel's vocational assessment regarding relator's limited academic functioning, but despite this accepting the jobs given by Mr. Anderson as appropriate for relator's condition.
 {¶ 9} Relator has filed objections to two aspects of the magistrate's decision: the magistrate's conclusion that the commission erred in failing to permit a deposition of Mr. Anderson, and that the commission did not err in denying PTD.
 {¶ 10} We first consider the question of whether the magistrate correctly found that the commission did not abuse its discretion in denying relator's request for a deposition of Mr. Anderson. We find that the magistrate properly considered State ex rel. Cox v. Greyhound FoodMgt., Inc., 95 Ohio St.3d 353, 2002-Ohio-2335, as the standard for granting a deposition request under comparable circumstances. The magistrate correctly noted that the Ohio Supreme Court in Cox observed that the enumerated factors for determining the reasonableness of a deposition were not exclusive and that some cases would require consideration of whether a defect in the report itself could be cured by deposition or whether the hearing itself was a reasonable option for resolving such questions. Examining Mr. Anderson's vocational report to the extent that it conflicts with that of Dr. Stoeckel, we find that the magistrate correctly noted that the two vocational experts, although they came to two different conclusions, relied on different assessment sources in reaching such conclusions and that the reports are not, for that reason, defective beyond resolution through the hearing process. As the Supreme Court stated in Cox, "the substantial-disparity criterion [of Ohio Adm. Code 4121-3-09(A)(6)(d)] often does not recognize the fundamentals of the hearing process. Disability hearings occur precisely because there is a disparity in the medical evidence. Unanimity does not usually generate a hearing. To the contrary, the need for a hearing generally arises when one doctor says that a claimant can work and the other disagrees. They are completely opposite opinions and that is why there is a hearing — to debate a disputed report's strengths and weaknesses." (Emphasis sic.) Cox, at 356. In applying the Cox standard to the facts before us, we agree with the magistrate's conclusion that the disparities between vocational reports did not warrant a deposition of Mr. Anderson.
 {¶ 11} We now turn to relator's assertion that the magistrate failed to address relator's allegations that the commission's order violatedState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, because of inconsistencies in the staff hearing officer's order. Relator asserts that the order is internally inconsistent because it found that relator could not perform jobs that require literacy, but then went on to list jobs that require literacy. As the magistrate noted, the commission can reject vocational reports in part or altogether and conduct its own analysis of the nonmedical factors. State ex rel. Singleton v. Indus.Comm. (1994), 71 Ohio St.3d 117. The extent to which the commission relied upon the various vocational assessments and medical reports before it is not inconsistent with the various conclusions contained in those reports that the commission chose to find probative, and, as such, the commission's order does not violate Noll.
 {¶ 12} After an independent review, we find that the magistrate has applied the controlling law in this case, and relator's objections to the magistrate's decision are not well-taken. Following this independent review of the record pursuant to Civ.R. 53, we accordingly adopt the magistrate's decision, including the findings of fact and conclusions of law therein, and deny the issuance of the requested writ.
Objections overruled; writ of mandamus denied.
Klatt and Sadler, JJ., concur.
Christley, J., retired, of the Eleventh Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Tommy C. Wheeler, : Relator, : v. : No. 04AP-662 Ohio Department of Transportation : (REGULAR CALENDAR) and Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 27, 2005 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Stephen P. Gast
and Daryl A.W. Crosthwaite, for relator.
Jim Petro, Attorney General; Lee M. Smith Associates, Co., L.P.A.,Lisa R. Miller and Lee M. Smith, special counsel for respondent Ohio Department of Transportation.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 13} Relator, Tommy C. Wheeler, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that relief. Furthermore, relator contends that the commission abused its discretion by denying his motion to depose vocational expert Mark A. Anderson.
Findings of Fact:
 {¶ 14} 1. Relator sustained a work-related injury on June 25, 1980, and his claim has been recognized for:
Injury to neck, back, cuts and bruises both legs; early degenerative disc disease at L3-4 and L4-5; herniated cervical disc C5-6; status post cervical fusion C5-7; degenerative disc disease at L5-S1; post laminectomy syndrome L3-S1.
 {¶ 15} 2. On December 15, 2000, relator filed his application for PTD compensation. Relator's application was supported by the October 14, 1999 report of Dr. Peter J. Fagerland, who opined as follows:
OPINION: Based on the allowed conditions and the AMA Guides to the Evaluation of Permanent Impairment, Fourth Edition, I find the following: It is my professional opinion that based upon Mr. Wheeler's age, education, work history, the current and permanent physical limitations, as well as the accumulative effects of his injuries and their residuals, I feel that Mr. Wheeler is permanently and totally disabled and is not capable of finding, nor sustaining, any form of remunerative employment whatsoever.
 {¶ 16} 3. The commission ordered a medical examination which was performed by Dr. James T. Lutz on April 17, 2001. After noting his physical findings, Dr. Lutz opined that relator had reached maximum medical improvement, assessed a 44 percent whole person impairment and noted, on a physical strength rating form, that relator was capable of performing sedentary work.
 {¶ 17} 4. An employability assessment report was prepared by Mark A. Anderson, M.S., LPC, CDMS, DABVE, and dated May 16, 2001. Based upon the medical report of Dr. Fagerland, Mr. Anderson concluded that relator was not employable. However, based upon the medical report of Dr. Lutz, Mr. Anderson concluded that relator could perform the following jobs:
Information Clerk, Document Preparer, Sorter, Order Clerk-Food 
Beverage, Security Camera Monitor, Patcher, Ampoule Sealer, Touch-Up Screener, Film Touch-Up Inspector, Data-Examination Clerk, Telephone Solicitor, Assembler.
 {¶ 18} Mr. Anderson concluded that relator's age of 56 would not be a major barrier to his return to entry-level, unskilled work activity; that his ability to read, write, and perform basic math would permit him to meet the basic demands of entry-level occupations that require no complex reading or math skills; that he has demonstrated the ability to perform semi-skilled to skilled work activity and has acquired management skills that would transfer to other occupations.
 {¶ 19} 5. Relator submitted an assessment prepared by Jennifer J. Stoeckel, Ph.D., dated May 30, 2001. Dr. Stoeckel administered the Wide Range Achievement Test III and noted that claimant read at a second grade level, spelled at a first grade level, and performed arithmetic at the fourth grade level. Based upon those test scores, Dr. Stoeckel noted that relator would have difficulty competing in entry-level positions. Dr. Stoeckel also administered the Wechsler Adult Intelligence Scale III and noted that relator's full-scale I.Q. score placed him at the upper limits of the borderline range for intellectual functioning. She opined that his scores were likely diminished as a combination of factors, most notably his history of multiple strokes. Dr. Stoeckel opined that relator was, within reasonable vocational certainty, permanently and totally disabled as a result of his allowed conditions, residual impairment, age, and his limited residual intellectual, academic and vocational functioning.
 {¶ 20} 6. Relator filed a motion requesting the right to depose Mr. Anderson.
 {¶ 21} 7. By order dated July 31, 2001, a staff hearing officer ("SHO") denied relator's request for the following reasons:
The claimant's motion requests authority to depose vocational expert, Mark Anderson. Mr. Anderson prepared a vocational assessment for the Industrial Commission on 5/16/01. As a basis for his motion claimant argues that there is a substantial disparity between the findings of Mr. Anderson and those of Dr. Jennifer Stoeckel who evaluated the claimant on 5/30/01 at the request of the claimant. The claimant argues specifically that Mr. Anderson assumes academic and vocational aptitudes that exceed the claimant's ability based upon the test results obtained by Dr. Stoeckel. The Staff Hearing Officer rejects this argument.
The Staff Hearing Officer finds that the difference in the general educational development in the report of Dr. Stoeckel and the report on [sic] Mr. Anderson differs. The Staff Hearing Officer further finds, however, that their findings are based upon different things. The findings of Dr. Stoeckel are based upon test scores. The findings of Mr. Anderson are based upon the general educational development that the claimant has exhibited in his work history, regardless of education or actual work skills. The Staff Hearing Officer finds that because the basis of the findings of Dr. Stoeckel is different from the basis of the findings of Mr. Anderson, they cannot be compared and the difference is not the basis of justification for a deposition.
As a[n] additional basis for his request to depose Mr. Anderson, claimant argues that Mr. Anderson fails to take into consideration the physical impairments identified by the commission doctor. Specifically[,] claimant argues that Mr. Anderson did not consider that the claimant has radiating pain into the lower extremities which limits standing to less than 30 minutes; and that claimant has right upper extremity pain down to the elbow which would be inconsistent with jobs which require fine manipulative dexterity. The Staff Hearing Officer is not persuaded by these arguments because these are not examination findings. These are merely recitations of what the claimant described to Dr. Lutz. These are not findings that are contained under the "examination findings" section of his report.
Therefore, it is the order of the Staff Hearing Officer that the claimant's motion is denied. The processing of all pending issues is to resume.
 {¶ 22} 8. Thereafter, relator's application for PTD compensation was heard before an SHO on October 25, 2001, and resulted in an order denying the requested compensation. The SHO specifically relied upon the medical report of Dr. Lutz and concluded that relator was capable of performing physical work activity at a sedentary level. The SHO then addressed both vocational reports and provided its own vocational analysis as follows:
The Staff Hearing Officer finds that the claimant is 56 years old, has an 8th grade formal education and attained a G.E.D., and has work experience as a boat operator, dump truck driver, club manager, telegrapher, police officer, juvenile detention attendant, cook, and project inspector. The Staff Hearing Officer finds that the claimant's age is a neutral factor which would not prevent him from adapting to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that the claimant's present academic functioning is not indicative of the formal education and attainment of a G.E.D. The Staff Hearing Officer finds that the claimant has diminished academic functioning as reported by Dr. Stoeckel, probably related to having undergone multiple strokes, which are not related to this industrial injury or the allowed conditions in this claim. The Staff Hearing Officer finds that such academic functioning would prevent the claimant from performing occupations that require literacy. The Staff Hearing Officer further finds, however, that the claimant would be capable of accessing entry level unskilled occupations that do not require literacy skills. The Staff Hearing Officer further finds that the claimant's work history is more extensive than what the claimant listed on his application for permanent total disability compensation. The claimant testified at hearing that he performed work for the United State[s] Army for approximately 13 years. This work included being a cook, boat operator, club manager, and telegrapher. The claimant further testified that upon discharge from the Army, he performed work as a police officer, juvenile detention attendant, wrecker operator, project inspector and dump truck driver. The Staff Hearing Officer finds that such a work history is an asset to the claimant in that it demonstrates his ability to perform a variety of work in different settings and skill levels, including skilled employment.
Considering only the allowed conditions in this claim arising from this industrial injury, in conjunction with the claimant's age, education, and work experience, the Staff Hearing Officer finds that the claimant would be capable of performing the employment options noted in the report of Mr. Anderson, such as: information clerk, document preparer, sorter, order clerk in the food and beverage industry, security camera monitor, patcher, ampoule sealer, touch-up screener, film touch-up inspector, data-examination clerk, telephone solicitor, and assembler.
 {¶ 23} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 25} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 26} The first issue raised by relator in this mandamus action is that the commission abused its discretion by denying his motion to depose vocational expert Mr. Anderson. Ohio Revised Code 4123.09 governs the taking of depositions in proceedings before the commission and provides as follows:
In claims filed before the industrial commission or the bureau of workers' compensation by injured employees and the dependents of killed employees on account of injury or death sustained by such employees in the course of their employment, the commission and bureau may cause depositions of witnesses residing within or without the state to be taken in the manner prescribed by law for the taking of depositions in civil actions in the court of common pleas.
 {¶ 27} R.C. 4123.09 provides that the commission and bureau may cause depositions of witnesses to be taken. The plain language of R.C. 4123.09
is permissive. See LTV Steel Co. v. Indus. Comm. (2000),140 Ohio App.3d 680, 691.
 {¶ 28} Relator cites Booth v. Indus. Comm. (May 19, 1981), Franklin App. No. 80AP-610, and asserts that the commission can only deny a motion for a deposition if the request is found to be unreasonable or if the purpose of the deposition is one of harassment. However, Booth was decided at a time when the Ohio Administrative Code provisions pertaining to the procedure for obtaining oral depositions was markedly different than it is now. The version of Ohio Adm. Code 4121-3-09 in effect at the relevant time regarding this mandamus action provides, in pertinent part, as follows:
(6) Procedure for obtaining the oral deposition of, or submitting interrogatories to, an industrial commission or bureau physician.
* * *
(d) The factors to be considered by the hearing administrator when determining the reasonableness of the request for deposition and interrogatories include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay. * * *
 {¶ 29} Although the reported decisions address only the question of depositions of physicians, this court has recognized circumstances where the denial of a request to take the deposition of a vocational expert constituted an abuse of discretion. State ex rel. Kamp v. Miami MargarineCo. (June 19, 1997), Franklin App. No. 96AP-1317, unreported (Memorandum Decision) (adopting Apr. 30, 1997 Magistrate's Decision). However, this court has also upheld a denial of leave to take the deposition of a vocational expert. See State ex rel. Tenoever v. Indus. Comm. (Sept. 21, 2000), Franklin App. No. 99AP-1349, affirmed, (2001), 92 Ohio St.3d 70.
 {¶ 30} The term "substantial disparity" is not defined in this context. In PTD cases, where a party has requested that the deposition of a doctor be taken, this court has noted that the term "substantially disparate" indicates that the reports do not have to be essentially opposite for a deposition to be approved; however, the term in its context suggests that the physician's clinical findings, and not necessarily their ultimate opinions, must be so divergent as to require some explanation so that, in the absence of a deposition or interrogatories, the finder of fact would lack an adequate basis for making a reasonable choice among the competing reports. State ex rel. Snell v. Indus. Comm.,
Franklin App. No. 01AP-1107, 2002-Ohio-2805.
 {¶ 31} In State ex rel. Cox v. Greyhound Food Mgt., Inc.,95 Ohio St.3d 353, 2002-Ohio-2335, the Supreme Court of Ohio clarified the standard for granting deposition requests. The court pointed out that a substantial disparity between percentage figures may be irrelevant when the disputed issue is not the claimant's percentage of disability. Moreover, the court noted that substantial disparities in the evidence are common place in PTD cases and that, in a disputed disability matter, one of the primary purposes of holding a hearing is to present and debate the relative strengths and weaknesses of the medical reports. The court further observed that the enumerated factors for determining the reasonableness of a deposition were not exclusive and that, in some cases, it would be more appropriate to consider whether there is a defect in the report that can be cured by a deposition and whether the hearing itself is an equally reasonable option for resolving the questions.
 {¶ 32} As such, in evaluating the relator's request to depose a vocational expert in this case, the magistrate looks at the reasonableness issue from the following perspective: (1) Does a defect exist that can be cured by deposition?; and (2) Is the disability hearing an equally reasonable option for resolution?
 {¶ 33} In reviewing the two vocational reports in the present case, this magistrate finds that relator is correct in asserting that the vocational experts came to two different conclusions; however, upon reviewing their reports, the magistrate notes that each of them relied upon different assessments in reaching their conclusions. Relator does not assert that there is any defect in the vocational report of Mr. Anderson and the fact that they relied upon different factors in reaching their conclusions is something that can be addressed at the hearing. As such, the magistrate finds that the commission did not abuse its discretion in denying relator's request to depose Mr. Anderson.
 {¶ 34} Relator also contends that the commission abused its discretion by denying his application for PTD compensation. However, relator's arguments are confined to the fact that the commission relied exclusively upon the report of Dr. Lutz to determine that relator could perform sedentary work and did not agree with the vocational assessment prepared by Dr. Stoeckel. Relator does not contend that Dr. Lutz's report does not constitute "some evidence" upon which the commission could rely. Furthermore, upon review of that report, this magistrate cannot find any defect on the face of his report nor any inconsistency that would disqualify it from consideration.
 {¶ 35} Relator also asserts that the commission's order is internally inconsistent from a vocational standpoint. The commission accepted Dr. Stoeckel's opinion that relator had limited academic functioning which would limit him to jobs that did not require literacy. Then the commission identified the jobs listed by Mr. Anderson as potential jobs relator could perform. Relator asserts that all of these jobs require some "literacy," thereby rendering the commission's report internally inconsistent and again highlighting the need to have been allowed to depose Mr. Anderson.
 {¶ 36} The commission is not required to rely on any vocational evidence. See State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, and State ex rel. Singleton v. Indus. Comm. (1994),71 Ohio St.3d 117. The commission can reject vocational reports altogether and conduct its own analysis of the nonmedical factors. In the present case, the commission both relied upon the report of Mr. Anderson, accepted Dr. Stoeckel's testing, and conducted its own analysis of the nonmedical factors. Further, relator himself, on his application, acknowledged that he could read, write, and perform math. Relator also indicated to Dr. Lutz that he spends most of the day answering the telephone at a used car lot owned by a friend. The commission evaluated all the vocational evidence and concluded that relator had the ability to perform entry-level unskilled jobs. Inasmuch as questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder, Teece, supra, the magistrate finds that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation.
 {¶ 37} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.